**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2593
_____

UNITED STATES OF AMERICA

v.

ANTHONY J. JACKSON
a/k/a
ANTHONY JACKSON

Anthony Jackson,
Appellant
_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 2-07-cr-00338-1)
District Judge: Honorable Maurice B. Cohill
_____

Submitted Under Third Circuit LAR 34.1(a)
May 12, 2011

Before: SMITH, CHAGARES AND VANASKIE, *Circuit Judges*

(Filed: June 14, 2011)

_____

OPINION
_____

VANASKIE, *Circuit Judge*.

At issue on this appeal is whether the prison sentence imposed by the District Court at the bottom of Appellant Anthony Jackson's advisory guidelines range is substantively unreasonable. We answer the question in the negative, and thus will affirm the District Court's judgment.

I.

Because we write solely for the parties, we will only briefly summarize the necessary facts. On October 12, 2005, Pittsburgh Police officers noticed Jackson's black Isuzu Rodeo with a Georgia license plate. An officer ran a routine check on the license plate and learned that the tag had been reported stolen. The officers pulled Jackson over. After asking Jackson to exit the vehicle, an officer explained that, according to his check on the license plate, the Georgia tag was stolen. Another officer looked into the vehicle with his flashlight, where he observed a Bursa, Model 85, .380 caliber pistol, manufactured in Argentina, located in plain view on the floor in the front passenger area. The firearm had a fully loaded magazine with a round in the gun's chamber. Jackson was subsequently charged as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

On January 13, 2010, Jackson entered a guilty plea for possessing a firearm while a convicted felon. At the May 24, 2010 sentencing, the parties agreed that Jackson's offense level was 12 and his criminal history category was V, thus yielding an advisory guidelines range of twenty-seven to thirty-three months' imprisonment. The court denied Jackson's requests to impose a sentence below the advisory guidelines range, and

2

imposed a twenty-seven-month term of imprisonment to be followed by three years of supervised release. Jackson timely appealed.

II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have appellate jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

Jackson attacks only the substantive reasonableness of his sentence. "The party challenging the sentence bears the ultimate burden of proving its unreasonableness, and we accord great deference to a district court's choice of final sentence." *United States v. Lessner*, 498 F.3d 185, 204 (3d Cir. 2007) (citations omitted). As we noted in *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (*en banc*), "if the district court's sentence is procedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided."

The District Court's responsibility is to "impose a sentence sufficient, but not greater than necessary," 18 U.S.C. § 3553(a), to comply with the factors set forth in § 3553(a)(2). Jackson makes two arguments concerning the District Court's application of the sentencing factors set forth in 18 U.S.C. § 3553(a). First, Jackson asserts that the District Court failed to consider his responsibility to take care of family members. Second, Jackson claims that the District Court erred by giving undue weight to his criminal history and arrest record. Both of Jackson's claims are belied by the record.

Jackson first argues that the District Court imposed a sentence greater than necessary because it did not adequately consider his family obligations. One of Jackson's

3

daughters died on February 16, 2009, leaving behind her daughter—Jackson's granddaughter. Custody of the granddaughter was split between Jackson and his ex-wife, with the granddaughter living with each of them for six-month periods. In addition, Jackson took care of his seventy-four-year-old mother.

At sentencing, the court observed that Jackson and his ex-wife "are splitting custody" of their granddaughter, and that each would care for her for six months of the year. (A. 89.) Counsel for Jackson also asked the court to consider that Jackson had "agreed to take this responsibility for at least raising his granddaughter." (*Id.* at 96.) No evidence was presented that Jackson's ex-wife would be unable to care for the granddaughter while Jackson was incarcerated. Nor was there any evidence that Jackson's granddaughter would suffer adverse long-term consequences by reason of his absence. Instead, it appears that Jackson pointed to the custody arrangement as showing that he was acting responsibly.

As to Jackson's mother, who resides in Columbus, Georgia, the District Court observed:

> And, certainly, his mother wrote a very touching letter about the care he gives to her, but I also noted from the presentence report that he's got three brothers who also live in Columbus, Georgia. I would hope that those three brothers would be in a position to help out with the mother, as well.

(*Id.* at 100.)

The District Court ultimately concluded, after "considering the various things we've heard this morning," (*id.* at 104), that a twenty-seven-month term of imprisonment was appropriate given "the history and background of the defendant." (*Id.* at 106.)

4

Although it may have been preferable for the District Court to explicitly mention its considerations of the custody arrangement, the failure to do so does not render the sentence substantively unreasonable, especially given the absence of any evidence of substantial harm to the granddaughter caused by Jackson's absence. Moreover, the District Court adequately responded to Jackson's argument concerning his mother. Jackson's claim that the District Court did not sufficiently consider his family obligations is thus without merit.

Jackson's other argument for challenging the reasonableness of his sentence pertains to the District Court's comments on Jackson's conviction and arrest record. The District Court stated:

> [W]e have to consider [Jackson's] twenty-four convictions. . . . Much higher [number] of convictions than we usually see. And there were thirteen other arrests which we . . . certainly don't count. But they do give you some idea about the kind of a lifestyle that the gentleman's living.
> Actually, I think there were twelve, thirteen other arrests and twenty-five total arrests. Thirteen in the presentence report and then twelve mentioned under the category, other arrests. So, it's certainly not a, not a good police rap.
> And, after considering the Guidelines and considering the statements which [defense counsel] has enumerated as reasons to grant a variance under 18 United States Code, Section 3553(a), I don't feel there is anything to warrant such, such a variance.

(*Id.* at 100-01.) After announcing the twenty-seven month prison term, the District Court stated that the sentence "does adequately address . . . the history and background of the defendant," explaining that it could not "disregard the extensive criminal history he's had." (*Id.* at 106.)

5

In imposing sentence, a District Court must, of course, give consideration to the defendant's "history and characteristics." 18 U.S.C. § 3553(a)(1). Consistent with this mandate, presentence investigation reports typically include information pertaining to arrests that do not result in convictions. In this case, Jackson did not object to the Presentence Report's enumeration of his lengthy conviction and arrest record.

It is, of course, true "that a bare arrest record -- without more -- does not justify an assumption that a defendant has committed other crimes and it therefore cannot support increasing his/her sentence in the absence of adequate proof of criminal activity." *United States v. Berry*, 553 F.3d 273, 284 (3d Cir. 2009). That is not, however, what occurred in this case.

Counsel for Jackson admitted that her client "had a [criminal] history that goes way back," (A. 90), and the District Court explicitly recognized Jackson's lengthy criminal history record. The District Court expressed its "concern[] by what happened while [Jackson] was on bond from this Court." (*Id.* at 94.) While released on the federal case, Jackson was arrested and convicted for unlawful possession of a firearm in the state of Georgia. (Presentence Report ¶ 56.) Moreover, while not applying a perjury enhancement, the court was troubled by Jackson's inconsistent statements concerning the firearm. Initially, at the time of the stop, as well as during the suppression hearing, Jackson denied ownership of the gun. Later, at sentencing, Jackson admitted that he owned the firearm. Therefore, the District Court had a substantial basis for imposing a within-guidelines range sentence. Stated otherwise, irrespective of Jackson's arrests, it cannot be said that "no reasonable sentencing court would have imposed the same

6

sentence . . . for the reasons the district court provided." *Tomko*, 562 F.3d at 568.

Consequently, Jackson's attack on the District Court's sentence falls short.

III.

For the foregoing reasons, we will affirm the judgment of sentence.